UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AURORA FINANCIAL GROUP, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>MARY K. TOLLEFSON, et al.,<br><br>                    Defendants. | CASE NO. C20-0297JLR<br><br>ORDER GRANTING IN PART AND DENYING IN PART THIRD-PARTY DEFENDANT'S MOTION TO DISMISS AMENDED THIRD-PARTY COMPLAINT |

## I.   INTRODUCTION

Before the court is Third-Party Defendant McCarthy & Holthus, LLP's ("MH") motion to dismiss Defendant Mary K. Tollefson's third-party claims.  (MTD (Dkt. # 20).) The court has reviewed MH's motion, the parties' submissions filed in support of and in opposition to MH's motion, the relevant portions of the record, and the applicable law.

//

//

1  Being fully advised,[1] the court GRANTS in part and DENIES in part MH's motion.  The

2  court DISMISSES all of Ms. Tollefson's claims against MH except for a portion of her

3  negligent misrepresentation claim.  As described below, the court DISMISSES these

4  claims WITHOUT PREJUDICE and with leave to amend except for those claims which

5  are based on statements MH made during the course of judicial proceedings.  These

6  statements are immune from suit, and the court DISMISSES Ms. Tollefson's claims that

7  are based on those statements WITH PREJUDICE and without leave to amend.

8  ## II.  BACKGROUND

9          On May 22, 2015, Ms. Tollefson executed and delivered to American Financial

10  Network a promissory note in the amount of $297,924.00.  (*See* Am. Ans. (Dkt. # 16)

11  ¶¶ 35-36;[2] *see also* Ans. (Dkt. # 2) Ex. D (Dkt. # 2-4) at 2-3; Not. of Rem. (Dkt. # 1) Ex.

12  A (Dkt. # 1-2).)  At the same time, Ms. Tollefson executed a deed of trust to Mortgage

13  Electronic Registration System, Inc. ("MERS"), as nominee for American Financial

14  Networks, Inc., encumbering her home as security for the promissory note.  (*See* Am.

15  Ans. ¶¶ 35-36; *see also* Ans. Ex. D at 4-15; Not. of Rem. Ex. B (Dkt. # 1-3).)  The deed

16  of trust was recorded on June 11, 2015, with the King County Auditor under Instrument

17  No. 20150611000745.  (Ans. Ex. D.)  On December 5, 2017, the deed of trust was

18  //

19

20          [1] No party requests oral argument (*see* MTD at 1; Resp. (Dkt. # 25) at 1), and the court does not consider oral argument to be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b).

21          [2] Section IV of Ms. Tollefson's amended answer contains counterclaims and third-party claims.  (*See* Am. Ans. at 7-35.)  The court's paragraph citations to Ms. Tollefson's amended answer are to this portion of her amended answer.

assigned to Plaintiff Aurora Financial Group, Inc. ("Aurora"), and the assignment was recorded on December 20, 2017, under Instrument No. 20141220000501. (*See* Am. Ans. ¶ 40; Ans. Ex. C (Dkt. # 2-3).)

On July 9, 2015, an identical deed of trust to the one Ms. Tollefson executed on May 22, 2015, was recorded again—this time under Instrument No. 20150709000211. (Am. Ans. ¶ 39; *see also* Ans. Ex. E (Dkt. # 2-5); Not. of Rem. Ex. BB (Dkt. # 1-4).) Once again, the listed beneficiary on the second deed of trust was MERS, as nominee for the lender American Financial Network, Inc. (*See* Ans. Ex. E; Not. of Rem. Ex. BB.) The two deeds of trust are identical in loan number, loan amount, and property description. (*Compare* Ans. Ex. D *with id.* Ex. E; *compare* Not. of Rem. Ex. B *with id.* Ex BB; *see also* Am. Ans. ¶ 39.)

Ms. Tollefson defaulted on her promissory note in August 2017. (Am. Ans. ¶¶ 4, 40.) Third-Party Defendant Freedom Mortgage Corporation ("Freedom Mortgage") obtained the servicing rights to the promissory note after Ms. Tollefson had defaulted and began seeking payment on the note. (*Id.* ¶ 9.)

In early 2018, Ms. Tollefson and Freedom Mortgage were referred to Washington State's foreclosure mediation program and assigned a foreclosure mediator. (*Id.* ¶ 41.) Under RCW 61.24.163, "the parties have a duty to mediate in good faith" and "failure to mediate in good faith may impair the beneficiary's ability to foreclose on the property or the borrower's ability to modify the loan or take advantage of other alternatives to foreclosure." RCW 61.24.163(7)(b)(iii); *see also* RCW 61.24.163(10). The parties

//

1  "scheduled and convened three [mediation] sessions" on May 2, 2018, July 9, 2018, and

2  August 13, 2018.  (Am. Ans. ¶ 41.)

3      Ms. Tollefson alleges that MH also attempted to collect payment on her

4  promissory note after she was in default and that MH was also referred to the foreclosure

5  mediation program and assigned a foreclosure mediator along with herself and Freedom

6  Mortgage.  (*See* Am. Ans. ¶¶ 16, 41.)  However, the "Foreclosure Mediation

7  Report/Certification" that Ms. Tollefson attaches to her initial answer identifies Ms.

8  Tollefson as the borrower, Freedom Mortgage as the beneficiary, and MH as Freedom

9  Mortgage's attorney.  (*See* Ans. Ex. F (Dkt. # 2-6) at 001, 004.)  Thus, the document that

10  Ms. Tollefson relies upon to support her allegations identifies MH not as a party to the

11  mediation, but rather as an attorney for one of the parties.  (*See id.*)

12      Ms. Tollefson alleges that the foreclosure mediator certified that both Freedom

13  Mortgage and MH were "lacking good faith in their foreclosure mediation participation."

14  (Am. Ans. ¶ 42.)  However, the Foreclosure Mediation Report/Certification that Ms.

15  Tollefson attaches to her initial answer and cites in her amended answer finds only the

16  "beneficiary" or Freedom Mortgage to be "not in good faith."  (*See* Ans. Ex. F at 002

17  (capitalization omitted).)  Specifically, the foreclosure mediator stated that the net present

18  value ("NPV") test or analysis was not completed and the beneficiary or Freedom

19  Mortgage "failed to adhere to [the] agreement made during the second mediation session

20  and complete review."  (*Id.*)

21      Ms. Tollefson alleges that three months following their initial foreclosure

22  mediation, Freedom Mortgage and MH served her with a second notice of default signed

1    November 5, 2018.  (An. Ans. ¶ 43.)  In early 2019, Ms. Tollefson was once again

2    referred to foreclosure mediation.  (*Id.*)  This time the parties convened two mediation

3    sessions on February 28, 2019, and June 12, 2019.  (*Id.*)  Ms. Tollefson again alleges that

4    the foreclosure mediator "certified that Freedom [Mortgage] and MH failed to meet their

5    duty of good faith."  (*Id.* ¶ 44.)  However, the Foreclosure Mediation Report/Certification

6    upon which Ms. Tollefson relies finds only the "beneficiary" or Freedom Mortgage to be

7    "not in good faith."  (*See* Ans. Ex. F at 005 (capitalization omitted).)  Specifically, the

8    foreclosure mediator stated that the "beneficiary failed to provide [a] timely [and]

9    complete set of documents."  (*Id.* (capitalization omitted).)  The foreclosure mediator also

10   stated in relevant part:

11          This is the second mediation for this property.  The first mediation ended
            with a finding of "not in good faith" by the beneficiary. . . . The borrower
12          provided required [documents] in a timely manner.  The beneficiary says
            they never received them but the borrower provided proof they were sent and
13          the mediator received them.  Beneficiary did not provide a ful[l] set of
            required documents in a timely manner and kept requesting more documents
14          that had already been provided from the borrower. . . .

15   (*Id.* (capitalization omitted).)

16          On January 31, 2020, Aurora, represented by MH, filed a lawsuit in Washington

17   State court against Ms. Tollefson for reformation of the deed of trust and judicial

18   foreclosure.  (*See* Compl. (Dkt. # 1-10).)  The complaint alleges that MERS has an

19   interest in Ms. Tollefson's property by way of a "Junior Deed of Trust."  (*Id.* ¶ 23.)  Ms.

20   Tollefson asserts that, in fact, the deed of trust naming MERS "is just a duplicate copy of

21   the original deed of trust recorded on July 9, 2015," under Instrument No.

22   20150709000211.  (*See* Resp. at 4; *see also* Am. Ans. ¶¶ 46-47.)  Ms. Tollefson alleges

1   that Aurora, Freedom Mortgage, and MH filed the complaint alleging that MERS has an

2   interest in her property that MERS does not have in retaliation "for the two bad faith

3   certification[s] in foreclosure mediation."  (Am. Ans. ¶¶ 47-49.)

4        Ms. Tollefson removed Aurora's complaint to this court on February 24, 2020.

5   (*See* Not. of Rem.)  Ms. Tollefson filed her initial answer to Aurora's complaint along

6   with counter-claims and a third-party complaint that same day.  (*See* Ans.)  On March 31,

7   2020, Ms. Tollefson filed her amended answer, counter-claims, and third-party

8   complaint.  (*See* Am. Ans.)  MH moved to dismiss Ms. Tollefson's third-party claims on

9   April 14, 2020.  (*See* MTD.)  The court now considers MH's motion.

10                          **III.   ANALYSIS**

11   **A.   Standard on a Motion to Dismiss**

12        Under Federal Rule of Civil Procedure 12(b)(6), dismissal for failure to state a

13   claim is proper only if the pleadings fail to allege sufficient facts to establish a plausible

14   entitlement to relief.  *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007).

15        While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
         need detailed factual allegations, . . . a plaintiff's obligation to provide the
16        "grounds" of his "entitle[ment] to relief" requires more than labels and
         conclusions, and a formulaic recitation of the elements of a cause of action
17        will not do . . . .  Factual allegations must be enough to raise a right to relief
         above the speculative level . . . on the assumption that all the allegations in
18        the complaint are true (even if doubtful in fact) . . . .

19   *Id*. at 555 (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678

20   (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual

21   matter, accepted as true, to state a claim to relief that is plausible on its face.").

22   Numerous federal courts have applied the pleading standards set forth in *Iqbal* and

ORDER - 6

1    *Twombley* with equal force to cross-claims, counterclaims, and third-party complaints.

2    *See, e.g.*, *Reishus v. Almaraz*, No. CV-10-0760-PHX-LOA, 2011 WL 42679, at \*3 (D.

3    Ariz. Jan. 6, 2011); *Se. Pa Transp. Auth. v. AECOM USA, Inc.*, No. 10-117, 2010 WL

4    4703533, at \*3 (E.D. Pa. Nov. 19, 2010) (citing, among other authorities, *Travelers*

5    *Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 256 n.13 (3d Cir. 2010)). A district

6    court must accept as true all the factual allegations contained in a third-party complaint

7    and draw all reasonable inferences in favor of the nonmoving party.  *Erickson v. Pardus*,

8    551 U.S. 89, 94 (2007); *Intri-Plex Tech., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1050 n.2

9    (9th Cir. 2007).  Mere legal conclusions, however, "are not entitled to the assumption of

10   truth."  *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011) (internal

11   quotation marks and citations omitted); *see also Lee v. City of L.A.*, 250 F.3d 668, 679

12   (9th Cir. 2001). ("Conclusory allegations of law . . . are insufficient to defeat a motion to

13   dismiss.").

14   **B.    Matters the Court Considers**

15        Generally, a district court may not consider any material beyond the pleadings in

16   ruling on a Rule 12(b)(6) motion to dismiss.  *Lee*, 250 F.3d at 688 (citations omitted).

17   One exception to this rule is that the court may take judicial notice of documents pursuant

18   to Federal Rule of Evidence 201.[3]  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988,

19   998 (9th Cir. 2018); *see also* Fed R. Evid. 201.  Thus, the "court may take judicial notice

20   of matters of public record without converting a motion to dismiss into a motion for

21   *//*

22   _____

     [3] "The court . . . may take judicial notice on its own."  Fed. R. Civ. P. 201(c)(1).

1    summary judgment." *See Khoja*, 899 F.3d at 999 (quoting Lee, 250 F.3d at 689

2    (quotation marks and citation omitted)).  In addition, the court may consider material that

3    is properly submitted as a part of the complaint. *Lee*, 250 F.3d at 688.  Further, if the

4    documents are not physically attached to the complaint, the court may still consider them

5    if their authenticity is not contested and the plaintiff's complaint necessarily relies on

6    them.  *Id.*  The court is entitled to consider all the documents cited in the background

7    section of this order based on one or both of these exceptions.  *See supra* § II.

8    **C.    Ms. Tollefson's Third-Party Claims against MH**

9          In her third-party complaint against MH, Ms. Tollefson raises the following

10   claims:  (1) abuse of process (Am. Ans. ¶¶ 52-69); (2) violation of Washington State's

11   Consumer Protection Act ("CPA"), RCW ch. 19.86 (Am. Ans. ¶¶ 70-109); (3) violation

12   of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Am.

13   Ans. ¶¶ 110-21); (4) slander of title (*id.* ¶¶ 129-40); (5) negligent misrepresentation (*id.*

14   ¶¶ 141-52); (6) the tort of outrage (*id.* ¶¶ 153-62); and (7) breach of the implied covenant

15   of good faith and fair dealing (*id.* ¶¶ 163-72).  MH moves to dismiss each of these claims.

16   (*See generally* MTD.)  The court considers each claim in turn.

17         1.   Abuse of Process

18         Ms. Tollefson alleges that her claim for abuse of process against MH is based on

19   MH's representation of Aurora with respect to Aurora's complaint in this action.  (*See*

20   Am. Ans. ¶ 54 ("Aurora, through its lawyers at [MH,] filed a lawsuit against Ms.

21   Tollefson . . . ."); *id.* ¶ 63.1 ("Aurora and [MH] filed the state court complaint in

22   retaliation for two consecutive foreclosure mediation findings of bad faith in 2018-2019.

1   Legal action here is used to punish Ms. Tollefson with the total and forced denial of any

2   alternative default mitigation to foreclosure."); *see also* Compl.)  Ms. Tollefson avers that

3   several allegations contained in Aurora's complaint misrepresent or omit facts concerning

4   the deeds of trust at issue here.  (*See, e.g.*, *id.* ¶ 56 ("Aurora's complaint is silent with

5   regard to the fact that the same deed of trust was recorded again July 9, 2015 . . . ."); *id.* ¶

6   58 ("Aurora's complaint plead[s] no facts alleging how the purported mistake [in the

7   deed of trust concerning a reference to the county] altered, or could have altered the

8   party's [sic] agreement."); *id.* ¶ 60 ("The state court complaint misrepresents that Aurora

9   is duly authorized to conduct business in Washington."); *id.* ¶ 61 ("The state court

10  complaint . . . misrepresents that MERS has an interest in Ms. Tollefson's property by

11  way of a 'Junior Deed of Trust.'").)  She asserts that MH drafted and filed the state court

12  complaint "in retaliation for two consecutive foreclosure mediations findings of bad faith

13  in 2018-2019" (*id.* ¶ 63.1), and that naming MERS as a co-defendant in the complaint

14  "fraudulently encumbered the property thus eliminating the appearance of a lien-free

15  property" (*id.* ¶ 63.2).

16          The tort of abuse of process is disfavored in Washington.  *See Batten v. Abrams*,

17  626 P.2d 984, 988-89 (Wash. Ct. App. 1981).  To prevail on an abuse of process theory,

18  the plaintiff must establish two elements:  (1) the existence of an ulterior purpose to

19  accomplish an object not within the proper scope of the process and (2) an act in the use

20  of legal process not proper in the regular prosecution of the proceedings.  *Id.* at 988; *Fite*

21  *v. Lee*, 521 P.2d 964, 968 (Wash. Ct. App. 1974).

22  *//*

1          First, the court rejects the notion that conduct within a foreclosure mediation can

2   form the basis for an abuse of process claim.  Indeed, Ms. Tollefson admits that "[t]here

3   does not seem to be a case specifically holding misuse of non-judicial foreclosure is a

4   misuse of process."  (Resp. at 10.)  "[A]lthough Washington courts have not yet ruled on

5   the issue, other courts have denied claims for malicious prosecution or abuse of process

6   based on a nonjudicial foreclosure proceeding because a nonjudicial foreclosure does not

7   constitute the type of legal action contemplated by such claims."  *Schwartz v. World*

8   *Savings Bank*, No. C11-0631JLR, 2012 WL 993295, at *5 (W.D. Wash. Mar. 23, 2012)

9   (citing cases).  The court finds these cases persuasive.  Under Washington's Foreclosure

10   Fairness Act ("FFA"), the failure to mediate in good faith is a defense in certain

11   circumstances to a nonjudicial foreclosure proceeding.  *See* RCW 61.24.163(14).  If a

12   nonjudicial foreclosure proceeding does not represent the type of action contemplated by

13   an abuse of process claim, neither does a mediation procedure that at best may serve as a

14   defense to a nonjudicial foreclosure proceeding.  Such a mediation procedure is even

15   further removed from the type of legal action contemplated by an abuse of process claim.

16   Thus, the court concludes that MH's alleged conduct during Ms. Tollefson's foreclosure

17   mediations cannot serve as the factual underpinning for her abuse of process claim.

18          The foregoing ruling leaves MH's participation in drafting and filing Aurora's

19   state court complaint with its alleged misrepresentations and omissions of fact as the sole

20   undergird of Ms. Tollefson's abuse of process claim.  However, "[t]he mere institution of

21   a legal proceeding even with a malicious motive does not constitute an abuse of process."

22   *Batten*, 626 P.2d at 988-89 (quoting *Fite*, 521 P.2d at 968).  Indeed, "there must be an act

1  after filing suit using legal process empowered by that suit to accomplish an end not

2  within the purview of the suit." *Id.* at 990.  Washington courts follow the majority of

3  courts in concluding that the filing of a lawsuit, even if the allegations are "baseless or

4  vexatious," does not constitute the tort of abuse of process.  *Id.* at 991.  Accordingly,

5  MH's mere participation in the drafting and filing of Aurora's state court complaint—

6  even if the complaint contains frivolous or inaccurate allegations—is insufficient to

7  maintain an abuse of process claim.

8        In sum, neither MH's representation of Freedom Mortgage in the foreclosure

9  mediations at issue here, nor MH's representation of Aurora in the drafting and filing of

10  Aurora's complaint is sufficient to allege an abuse of process claim against MH.

11  Accordingly, the court grants MH's motion to dismiss Ms. Tollefson's cabuse of process

12  claim against MH.

13        2.  CPA

14        To recover under the CPA, a plaintiff must prove an "(1) unfair or deceptive act or

15  practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to

16  plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge*

17  *Training Stables, Inc. v. Safeco Title Ins. Co*., 710 P.3d 531, 533 (Wash. 1986).  MH

18  argues that the court should dismiss Ms. Tollefson's CPA claim because she has failed to

19  allege any unfair or deceptive act by MH.  (MTD at 10.)  The Washington Legislature,

20  however, has declared that "[i]t is an unfair or deceptive act in trade or commerce and an

21  unfair method of competition in violation of the [CPA] . . . , for any person or entity

22  to . . . [v]iolate the duty of good faith under RCW 61.24.163."  RCW 61.24.135.  Thus, if

1    the foreclosure mediator found MH in bad faith during Ms. Tollefson's foreclosure

2    mediations—as she alleges (*see* Am. Ans. ¶¶ 42, 44, 77, 86-89)—the first two elements

3    of Ms. Tollefson's CPA claim would be met.

4         In her response to MH's motion, Ms. Tollefson argues that the foreclosure

5    mediator found MH to be "not in good faith" during the foreclosure mediations.  (*See*

6    Resp. at 10-11 ("Both foreclosure mediators included [MH] in their bad faith

7    certifications.") (citing Ans. Ex. F & RCW 61.24.135); *see also* Am. Ans. ¶¶ 42, 44 77,

8    86-89.)  However, the documents Ms. Tollefson cites in her third-party complaint do not

9    support her allegation that the foreclosure mediator certified that MH violated its duty to

10   negotiate in good faith.  (*See* Am. Ans. ¶ 42 (citing Ans. Ex. F at 2).)  Indeed, the

11   Foreclosure Mediation Report/Certification that Ms. Tollefson attaches to her initial

12   answer and cites in her amended answer finds only the "beneficiary" or Freedom

13   Mortgage to be "not in good faith."  (*See* Ans. Ex. F at 002, 005 (capitalization omitted).)

14   Further, pursuant to the Foreclosure Mediation Report/Certification, MH was not a party

15   to the mediation but rather only appeared as Freedom Mortgage's attorney.  (*See id.* at

16   001, 004.)  Thus, the court does not find Ms. Tollefson's allegation that MH was found to

17   be "not in good faith" during the foreclosure mediation to be plausible and disregards it.

18        Ms. Tollefson nevertheless argues that MH is liable for the foreclosure mediator's

19   finding that Freedom Mortgage was "not in good faith" by virtue of MH's status as

20   Freedom Mortgage's attorney and agent.  (Resp. at 11.)  In analogous circumstances

21   involving an alleged violation of the FDCPA, the Ninth Circuit stated that "there is no

22   legal authority for the proposition that an attorney is generally liable for the actions of his

1   [or her] client."[4]  *See Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1173

2   (9th Cir. 2006).  The court finds this authority persuasive in the context of an alleged

3   CPA violation.  Accordingly, the court concludes that MH cannot be held liable for the

4   foreclosure mediator's finding that Freedom Mortgage "was not in good faith" or for a

5   CPA violation based merely on MH's status as Freedom Mortgage's attorney.  The court

6   concludes that Ms. Tollefson has failed to allege facts supporting an unfair or deceptive

7   act on the part of MH.  Thus, the court grants MH's motion to dismiss Ms. Tollefson's

8   CPA claim.

9        3.   FDCPA

10       The elements of an FDCPA claim are:  (1) the plaintiff has been the object of

11  collection activity arising from a consumer debt; (2) the defendant collecting the "debt" is

12  a "debt collector" as defined in the FDCPA; and (3) the defendant engaged in any act or

13  omission in violation of the provisions of the FDCPA.  *See Estate of Hoskins v. Wells*

14  *Fargo Bank, N.A.*, No. C20-75RSM, 2020 WL 3884517, at *8 (W.D. Wash. July 9,

15  2020).  MH argues that the court should dismiss Ms. Tollefson's FDCPA claim because

16  her allegations fail to show that MH violated any provision of the FDCPA.  (MTD at

17  11-12.)  The court agrees for the reasons stated below.

18

19       [4] The case that Ms. Tollefson relies upon is distinguishable.  (*See* Resp. at 11 n.5.)  In
    *Fite*, the court held that the attorney and not the client could be held liable for abuse of process

20  when the attorney acted outside the authority and without the knowledge of his client.  *See Fite*,
    521 P.2d at 969 ("It follows then that if an attorney has, without the knowledge or consent of his

21  client, abused process to the damage of another, the attorney acts outside the scope of agency and
    the client should not be held derivatively liable. . . . Consequently dismissal of the action against

22  the client should not be res judicata of the injured party's claim against the attorneys." (citations
    omitted)).  Thus, the court's narrow holding in *Fite* is inapplicable here.

1    First, Ms. Tollefson repeatedly describes MH as a "debt collector," "attempting to

2    collect a 'debt,'" "engaged in the business of collecting debts," a "collection agency," or

3    in a similar manner without accompanying factual content. (*See, e.g.*, Am. Ans.

4    ¶¶ 15-19, 20-21, 24-27, 114.)  These allegations constitute nothing more than legal

5    conclusions, and they fail to meet the *Iqbal/Twombly* pleading standard.  *See Iqbal*, 556

6    U.S. at 678; *Twombly*, 550 U.S. at 555-57.  Accordingly, the court disregards them.

7    To the extent that Ms. Tollefson bases her FDCPA claim on MH's alleged

8    involvement in enforcing the deeds of trust on her property or serving a notice of default

9    as a part of that process (*see, e.g.*, Am. Ans. ¶¶ 43, 113), Ninth Circuit authority

10   precludes such a claim.  Specifically, in *Vien-Phuong Thi Ho v. Recontrust Co.*, the Ninth

11   Circuit concluded that "actions taken to facilitate a non-judicial foreclosure, such as

12   sending the notice of default and notice of sale, are not attempts to collect 'debt' as that

13   term is defined by the FDCPA."  858 F.3d 568, 572 (9th Cir. 2017).

14   Nevertheless, the Ninth Circuit has also concluded that "some security enforcers

15   are debt collectors only for the limited purposes of [15 U.S.C. § 1692f(6)]."

16   *Vien-Phuong Thi Ho*, 858 F.3d at 573.  A security enforcer violates 15 U.S.C. § 1692f if

17   it takes or threatens to take any nonjudicial action to effect dispossession or disablement

18   of property if "there is no present right to possession of the property claimed as collateral

19   through an enforceable security interest," "there is no present intention to take possession

20   of the property," or " the property is exempt by law from such dispossession or

21   disablement."  15 U.S.C § 1692f(6)(A)-(C).

22   //

ORDER - 14

1       Although Ms. Tollefson generally alleges that Freedom Mortgage's and MH's

2   conduct during Ms. Tollefson's foreclosure mediations violated 15 U.S.C. § 1692f(6)

3   (*see* Am. Ans. ¶¶ 115-115.3), she fails to allege facts supporting MH's liability for any of

4   the specific acts referenced in 15 U.S.C. § 1692f(6)(A)-(C) (*see generally* Am. Ans.).  As

5   noted above, MH was not a party to the mediation and served only as Freedom

6   Mortgage's attorney.  (*See* Ans. Ex. F at 001, 004.)  In *Fox v. Citicorp Credit Servs., Inc*.,

7   15 F.3d 1507 (9th Cir. 1994), the Ninth Circuit concluded that, in the context of an

8   FDCPA violation, "Congress intended the actions of an attorney to be imputed to the

9   client on whose behalf they are taken." *Id.* at 1516.  Although the ruling in *Fox* might

10  serve as a basis for finding a deed of trust beneficiary liable based on the alleged actions

11  of its attorney, it is not a basis for finding MH liable based on Freedom Mortgage's

12  alleged behavior.  *See id.*  On the other hand, in *Clark*, the Ninth Circuit held that the

13  district court appropriately granted summary judgment in favor of an attorney who was

14  retained by a debt collector to send a collection letter and take other legal actions against

15  the debtor.  460 F.3d at 1173.  The attorney could not be held vicariously liable for the

16  actions of his client because the debtors did not offer any evidence "upon which a

17  reasonable trier of fact could conclude that [the attorney] exercised control over [the debt

18  collector]." *Id*.  Likewise, here, Ms. Tollefson has not alleged any facts to suggest that

19  MH exercised control over Freedom Mortgage.  Indeed, she has only alleged that MH

20  served as both Aurora's and Freedom Mortgage's attorney and therefore agent.  (*See* Am.

21  Ans. ¶ 54 ("Aurora, through their lawyers at [MH] filed a lawsuit against Ms. Tollefson

22  in King County Superior Court . . . ."); Ans. Ex. F at 001, 004 (identifying MH as

1   Freedom Mortgage's attorney in the foreclosure mediations)); *see also Comm'r v. Banks*,

2   543 U.S. 426, 436 (2005) ("The relationship between client and attorney, regardless of

3   the variations in particular compensation agreements or the amount of skill and effort the

4   attorney contributes, is a quintessential principal-agent relationship.") (citing Restatement

5   (Second) of Agency § 1, cmt. e (1957)).

6       Finally, Ms. Tollefson alleges that MH is liable under the FDCPA for drafting

7   Aurora's state court complaint which names MERS as a defendant and seeks a judicial

8   foreclosure on her property.  (*See* Am. Ans. ¶ 115.4; *see also id.* ¶¶ 35-36; Ans. Ex. D at

9   4-15; Not. of Rem. Ex. B.)  Ms. Tollefson argues that the description in Aurora's

10  complaint of the duplicate deed of trust as a "Junior Deed of Trust" benefiting MERS

11  misrepresents an interest in Ms. Tollefson's property and "threatens to exact possession

12  of a larger interest in Ms. Tollefson's property than Aurora can rightfully claim."  (*See*

13  Am. Ans. ¶ 115.4; *see also* Compl. ¶ 23.)

14      The Ninth Circuit recently considered whether a person who initiates a judicial

15  foreclosure is attempting to collect a debt within the confines of the FDCPA.  The Court

16  stated in pertinent part:

17          Our cases make clear that a plaintiff must identify something beyond the
            mere enforcement of a security interest to establish that the defendants are
18          acting as debt collectors subject to the FDCPA's broad code of conduct. . . .
            That additional debt-collection ingredient can be present for judicial
19          foreclosure, provided that state law permits a creditor to recover money from
            the debtor after foreclosure if the property sells for less than the debt. . . .
20          That remedy, called a deficiency judgment, is often available in judicial
            foreclosure proceedings (but typically not in non-judicial proceedings). . . .
21          But unless a deficiency judgment is on the table in the proceeding, a person
            judicially enforcing a deed of trust in seeking only the return or sale of the
22          security, not to collect a debt.

ORDER - 16

1    *Barnes v. Routh Crabtree Olsen PC*, 963 F.3d 993, 999 (9th Cir. 2020).  In its complaint,

2    Aurora asks for a deficiency judgment.  (Compl. ¶ 28.)  Thus, Aurora's complaint may

3    constitute an attempt to collect a debt within the scope of the FDCPA.

4        However, Ms. Tollefson has failed to identify any role by MH in the filing of the

5    complaint other than to act as Aurora's attorney.  (*See id.* ¶ 54 ("Aurora, through their

6    [sic] lawyers at [MH] filed a lawsuit against Ms. Tollefson in King County Superior

7    Court . . . ."); *see also id.* ¶ 63.1 ("Aurora and [MH] filed the state court complaint in

8    retaliation for two consecutive foreclosure mediation findings of bad faith in

9    2018-2019.").)  As noted above, Ms. Tollefson makes no allegations that MH exercised

10   control over Aurora.  (*See generally id.*)  Accordingly, there is no basis alleged in Ms.

11   Tollefson's FDCPA claim for a finding of liability on the part of MH merely because MH

12   served as Aurora's attorney in the drafting and filing of Aurora's state court complaint.

13   *See Clark*, 460 F.3d at 1173.  Accordingly, the court concludes that Ms. Tollefson has

14   failed to properly allege an FDCPA claim against MH and grants MH's motion to dismiss

15   this claim.

16       4.  Negligent Misrepresentation

17       To state a claim for negligent misrepresentation, Ms. Tollefson must allege the

18   following elements:  (1) the defendant supplied information for the guidance of others in

19   their business transaction that was false; (2) the defendant knew or should have known

20   that the information was supplied to guide the plaintiff in his or her business transaction;

21   (3) the defendant was negligent in obtaining or communicating the false information; (4)

22   the plaintiff relied on the false information supplied by the defendant; (5) the plaintiff's

1    reliance on the false information supplied by the defendant was justified (that is, the

2    reliance was reasonable under the surrounding circumstances); and (6) the false

3    information was the proximate cause of the plaintiff's damages. *ESCA Corp. v. KMPG*

4    *Peat Marwick*, 959 P.2d 651, 654 (Wash. 1988). Ms. Tollefson argues that MH supplied

5    false information during the foreclosure mediation sessions and misrepresented and

6    omitted material facts from the state court complaint that MH drafted for Aurora. (*See*

7    Am. Ans. ¶¶ 141-52.)

8        MH challenges only the first element of Ms. Tollefson's negligent

9    misrepresentation claim. (*See* MTD at 15.) MH argues that because it was not a party to

10   the mediations but only acted as Freedom Mortgage's counsel, it did not supply any

11   information to Ms. Tollefson. (*See id.* ("Because MH was not a party [to the foreclosure

12   mediation sessions] required to supply information during the mediations, [Ms.

13   Tollefson's] entire claim fails.").) Further, MH argues that Aurora's complaint did not

14   contain any false statements. (*Id.*)

15        First, the court notes that "[n]othing in Washington case law supports the

16   contention that attorneys are exempt from liability to nonclients for negligent

17   misrepresentation." *Lawyers Title Ins. Co. v. Baik*, 55 P.3d 619, 625 n.10 (Wash. 2002).

18   However, Washington courts have recognized absolute immunity in a judicial proceeding

19   for statements made by a witness, a party, or an attorney during the course of a judicial

20   proceeding. *See Bruce v. Byrne-Stevens & Assocs. Eng'rs, Inc.,* 776 P.2d 666, 669-70

21   (Wash. 1989) (applying the immunity to witnesses); *McNeal v. Allen*, 621 P.2d 1285,

22   1286 (Wash. 1980) (applying the immunity to parties and attorneys). The immunity is

ORDER - 18

1    generally applied to bar suits alleging defamation but is not limited to defamation.  *See,*

2    *e.g.*, *Jeckle v. Crotty*, 85 P.3d 931, 937 (Wash. Ct. App. 2004) (applying the immunity to

3    claims for interference with the plaintiff's business relationship with his patients, outrage,

4    infliction of emotional distress, and civil conspiracy).  Because statements made by

5    counsel in the course of judicial proceedings are immune from suit, Ms. Tollefson may

6    not base her negligent misrepresentation claim on statements drafted by MH and included

7    in Aurora's complaint.  To the extent that Ms. Tollefson's claim is based on these

8    statements, the court grants this portion of MH's motion and dismisses this portion of Ms.

9    Tollefson's negligent misrepresentation claim.

10        The statements that Ms. Tollefson alleges that MH made during the foreclosure

11   mediation proceedings, however, are not subject to the immunity for statements made in

12   the course of judicial proceedings.  Significantly, the mediation sessions are ancillary to

13   Freedom Mortgage's and Aurora's attempt to nonjudicially foreclose on Ms. Tollefson's

14   property.  *See Brown v. Wash. State Dep't of Commerce*, 359 P.3d 771, 773-75 (Wash.

15   2015) (describing the interplay between Washington's Deed of Trust Act ("DTA"), RCW

16   ch. 61.24, and mediation under the FFA).  Thus, not only are mediation sessions

17   conducted under the FFA not judicial proceedings, they are not even ancillary to judicial

18   proceedings.  Accordingly, it is possible for an attorney to be held liable for negligent

19   misrepresentation for statements he or she made during such mediation sessions even if

20   those statements were made on behalf of a client—so long as all the elements of the tort

21   are otherwise present.  The court, therefore, rejects MH's argument that Ms. Tollefson's

22   claim fails because MH was not a party to the mediation and cannot be held liable for

1   "relaying" the statements of its clients Freedom Mortgage or Aurora.  (*See* MTD at 15.)

2   Accordingly, the court denies MH's motion to dismiss Ms. Tollefson's negligent

3   misrepresentation claim for MH's alleged misrepresentations made during Ms.

4   Tollefson's foreclosure mediation sessions.

5          5.  Slander of Title

6          Ms. Tollefson's claim against MH for slander of title is based on the statements

7   contained in Aurora's complaint that MH drafted.  (*See* Am. Ans. ¶¶ 129-40.)  Ms.

8   Tollefson alleges that statements in Aurora's complaint alleging that MERS has an

9   interest in her property and that there is a "Junior Deed of Trust" encumbering her

10  property are false and caused her to suffer pecuniary loss.  (*See id.*)  For the same reason

11  that MH is immune with respect to Ms. Tollefson's claim of negligent misrepresentation

12  arising out of statements contained in Aurora's complaint, MH is also immune from

13  liability for slander of title arising out of those same statements.  *See supra* § III.C.4

14  (discussing the applicability of immunity for statements made in the course of judicial

15  proceedings).  Accordingly, the court grants this portion of MH's claim and dismisses

16  Ms. Tollefson's claim for slander of title against MH.

17         6.  Tort of Outrage

18         To state a claim for outrage, Ms. Tollefson must allege: "(1) extreme and

19  outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3)

20  actual result to the plaintiff of severe emotional distress."  *See Dicomes v. State*, 782 P.2d

21  1002, 1012 (Wash. 1989).  Although these three elements are questions of fact for the

22  jury, the court must initially "determine if reasonable minds could differ on whether the

1  conduct was sufficiently extreme to result in liability." *Id*.  "The conduct in question

2  must be so outrageous in character, and so extreme in degree, as to go beyond all possible

3  bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

4  community." *Id.* (internal quotation marks omitted).

5        MH moves to dismiss this claim arguing that Ms. Tollefson's allegations against it

6  do not amount to the type of outrageous behavior encompassed by the tort.  (MTD at

7  15-17.)  Ms. Tollefson relies on her allegations that the foreclosure mediator twice found

8  MH to be in bad faith during the foreclosure mediations and that MH misrepresented the

9  nature of MERS's interest in the duplicate deed of trust recorded against her property

10  when MH drafted and filed Aurora's state court complaint.  (*See, e.g.*, Am. Ans. ¶¶ 157,

11  159; *see also* Resp. at 16-17).  She argues that MH's actions resulted in a cloud on the

12  title of her property, reduced her property's value, violated the DTA, and caused her

13  grief, shame, and humiliation.  (*See* Resp. at 17; *see also* Am. Ans. ¶ 160.)  She argues

14  that these allegations are sufficiently extreme to meet the threshold for outrage.  (*See*

15  Resp. at 15-18.)

16        First, the court notes that it has found Ms. Tollefson's allegation that the

17  foreclosure mediator found MH in bad faith to be not plausible based on the documents

18  Ms. Tollefson relies upon in her complaint.  *See supra* § III.C.2.  Second, as for the

19  remainder of Ms. Tollefson's allegations against MH, the court agrees with MH that they

20  do not meet the threshold for stating the tort of outrage.

21        In *Lyons v. U.S. Bank National Association*, the Washington Supreme Court

22  recognized that "[c]onduct during foreclosure could support a claim for intentional

1    infliction of emotional distress, but it must satisfy the high burden applicable to these

2    claims." 336 P.3d 1142, 1151 (Wash. 2014). Indeed, courts have found outrageous

3    conduct in situations where the defendants allegedly induced the plaintiff to enter a loan

4    modification agreement, accepted payments for more than two years, then revoked the

5    agreement, declared the borrower in default, and attempted to foreclose, *see Estes v.*

6    *Wells Fargo Home Mortg.*, No. C14-5234 BHS, 2015 WL 362904, at *6 (W.D. Wash.

7    Jan. 27, 2015), and where defendants allegedly engaged in similar conduct and also used

8    a perjured declaration in the foreclosure process, *see Montgomery v. SOMA Fin. Corp.*,

9    No. C13-360 RAJ, 2014 WL 2048183, at *7 (W.D. Wash. May 19, 2014).

10       Ms. Tollefson, however, alleges nothing as extreme or outrageous against MH in

11   this case. Significantly, Ms. Tollefson admits that she is in default on her promissory

12   note. (*See* Am. Ans. ¶¶ 4, 40.) The plaintiffs' allegations concerning default in *Estes* and

13   *Montgomery* stand in contrast to Ms. Tollefson's straightforward admission. In *Estes*, the

14   plaintiff was making trial payments on the defendants' proposed loan modification at the

15   time that the defendants nevertheless initiated a nonjudicial foreclosure against the

16   plaintiff's property. 2015 WL 362904, at *2-*3. In *Montgomery*, the plaintiffs alleged

17   that the defendants never applied certain monthly mortgage payments to their account

18   balance, represented that the plaintiffs were in default on their note when they were not,

19   and then induced the plaintiffs to default so the defendants could foreclose on the

20   property. 2014 WL 2048183, at *1-*2. These factual distinctions concerning default

21   render the defendants' alleged behavior in *Estes* and *Montgomery* more extreme.

22   //

1    The essence of Ms. Tollefson's allegations against MH is as follows:  Ms.

2    Tollefson alleges that MH served as counsel to a client, Freedom Mortgage, who the

3    foreclosure mediator twice found to be in bad faith as to its conduct during Ms.

4    Tollefson's foreclosure mediations.  (*See* Ans. Ex. F); *see also supra* § III.C.2 (finding

5    Ms. Tollefson's allegations that MH was a party to the mediation, as opposed to Freedom

6    Mortgage's counsel, and that the foreclosure mediator found MH in bad faith during the

7    mediations to be implausible).  In addition, Ms. Tollefson asserts that MH represented

8    Aurora in drafting and filing Aurora's state court complaint and that the complaint's

9    allegations misrepresent and omit material facts concerning the deeds of trust recorded on

10   her property.  (*See* Am. Ans. ¶¶ 46-49.)  These allegations are more akin to the majority

11   of cases in which courts have found that although a defendant's alleged actions during the

12   foreclosure process may have violated the DTA, supported a CPA claim, or been

13   "problematic, troubling, or even deplorable," *see Vawter v. Quality Loan Serv. Corp. of*

14   *Wash.*, 707 F. Supp. 2d 1115, 1128 (W.D. Wash. 2010), they did not "shock the

15   conscience or go beyond all sense of decency" and were insufficient to support the tort of

16   outrage, *Lyons*, 336 P.3d at 1152; *see also Grande v. U.S. Bank Nat'l Ass'n*, No. C19-333

17   MJP, 2019 WL 3238471, at *6 (W.D. Wash. July 18, 2019) (concluding that the

18   defendant bank's actions in foreclosing on the plaintiffs' property after agreeing to but

19   failing to execute multiple loan modifications was insufficient to constitute the tort of

20   outrage).  Accordingly, the court grants this portion of MH's motion and dismisses Ms.

21   Tollefson's outrage claim against MH.

22   //

ORDER - 23

1     7.   <u>Breach of the Implied Covenant of Good Faith</u>

2          Ms. Tollefson also alleges a breach of the implied covenant of good faith and fair

3     dealing against MH.  (*See* Am. Ans. ¶¶ 163-72.)  MH moves to dismiss this claim on

4     grounds that Ms. Tollefson has failed to allege any contractual relationship between MH

5     and herself.  (MTD at 17.)

6          Under Washington law, an implied duty of good faith and fair dealing exists in

7     every contract.  *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991) ("There is in

8     every contract an implied duty of good faith and fair dealing.").  However, the duty arises

9     only in connection with contractual terms agreed to by the parties.  *Id.*  Indeed, "[t]he

10    implied duty of good faith is derivative, in that it applies to the performance of specific

11    contract obligations."  *Johnson v. Yousoofian*, 930 P.2d 921, 925 (Wash. Ct.  App. 1996),

12    *as amended* (Jan. 9, 1997).  "If there is no contractual duty, there is nothing that must be

13    performed in good faith."  *Id.*  Thus, as a threshold matter, Ms. Tollefson must plausibly

14    allege privity between herself and MH to bring contract-based claims, including a claim

15    that MH violated the duty of good faith and fair dealing.  *See Kautsman v. Carrington*

16    *Mortg. Servs., LLC*, No. C16-1040-JCC, 2018 WL 513588, at *4 (W.D. Wash. Jan. 23,

17    2018) (citing *N.W. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash.

18    Ct. App. 1995)).  She has failed to do so, and indeed, based on Ms. Tollefson's

19    allegations, there does not appear to be any such relationship.  (*See generally* Am. Ans.)

20    Instead, Ms. Tollefson alleges that MH is counsel to Aurora and Freedom Mortgage.

21    (*See id.* ¶ 54 ("Aurora, through their lawyers at [MH] filed a lawsuit against Ms.

22    *//*

1    Tollefson in King County Superior Court . . . ."); Ans. Ex. F at 001, 004 (identifying MH

2    as Freedom Mortgage's attorney in the foreclosure mediations).)

3         Ms. Tollefson nevertheless argues that the court should not dismiss this claim

4    because Washington courts have found joint and several liability between lenders and

5    their assigns.  (Resp. at 18-19 (citing *White v. Homefield Fin., Inc*., 545 F. Supp. 2d

6    11159, 1166 (W.D. Wash. 2008)).)  However, Ms. Tollefson asserts no allegations that

7    the lender or mortgagee herein assigned any of its interest in Ms. Tollefson's promissory

8    note to MH.  (*See generally* Am. Ans.)  Accordingly, the court grants this portion of

9    MH's motion and dismisses Ms. Tollefson's claim against MH for breach of the implied

10   covenant of good faith and fair dealing.

11   **D.    Leave to Amend**

12        When the court grants a motion to dismiss, it must also decide whether to grant

13   leave to amend.  *Mora v. Countrywide Mortg*., No. 2:11-cv-00899-GMN-RJJ, 2012 WL

14   254056, at *2 (D. Nev. Jan. 26, 2012).  Ordinarily, leave to amend a complaint should be

15   freely given following an order of dismissal.  *See* Fed. R. Civ. P. 15(a)(2).  Generally,

16   leave to amend is only denied when it is clear that the deficiencies of the complaint

17   cannot be cured by amendment.  *See Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*,

18   368 F.3d 1053, 1061 (9th Cir. 2004); *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655,

19   658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the

20   amendment would be futile." (citing *Reddy v. Litton Indus., Inc*., 912 F.2d 291, 296 (9th

21   Cir. 1990)).

22   //

1    Here, the court concludes that it would be futile for Ms. Tollefson to replead the

2    portion of her negligent misrepresentation claim that is based on allegations MH draft in

3    Aurora's complaint herein or her slander of title claim against MH.  This is so because

4    these claims are based statements made in the course of judicial proceedings and are

5    therefore immune from suit.  *See supra* §§ III.C.4, III.C.5.  Accordingly, the court

6    dismisses these claims with prejudice.  However, the court grants Ms. Tollefson leave to

7    amend the remainder of her claims against MH, if appropriate.  If Ms. Tollefson elects to

8    amend her complaint in a manner consistent with this order, then she must file her

9    amended complaint within 20 days of the filing date of this order.

10                           **IV.    CONCLUSION**

11    Based on the foregoing analysis, the court GRANTS in part and DENIES in part

12    MH's motion to dismiss Ms. Tollefson's claims (Dkt. # 20).  The court GRANTS MH's

13    motion and dismisses all of Ms. Tollefson's claims against MH except for a portion of

14    her claim for negligent misrepresentation.  The court GRANTS Ms. Tollefson leave to

15    amend her complaint except for those tort claims that are based on statements MH drafted

16    in Aurora's state court complaint.  The court DISMISSES these claims, which include

17    Ms. Tollefson's claim for slander of title and a portion of her claim for negligent

18    misrepresentation, WITH PREJUDICE and without leave to amend because MH is

19    //

20    //

21    //

22    //

1  immune from suit based on statements it made in the course of judicial proceedings.  *See*

2  *supra* §§ III.C.4, III.C.5, III.D.

3      Dated this 19th day of August, 2020.

4

5

6      JAMES L. ROBART
       United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22