1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

MARY K TOLLEFSON,

11

Plaintiff,

v.

12

AURORA FINANCIAL GROUP,
INC., et al.

13

14

Defendants.

CASE NO. C20-0297JLR

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION TO
DISMISS SECOND AMENDED
COMPLAINT

15

16

**I.   INTRODUCTION**

17

Before the court is Defendant McCarthy & Holthus, LLP's ("MH") motion to

18

dismiss Plaintiff Mary K. Tollefson's second amended complaint.  (Mot. (Dkt. # 48).)

19

Ms. Tollefson opposes the motion.  (Resp. (Dkt. # 50).)  The court has reviewed MH's

20

motion, the parties' submissions filed in support of and in opposition to MH's motion, the

21

//

22

//

relevant portions of the record, and the applicable law.  Being fully advised,[1] the court

GRANTS in part and DENIES in part MH's motion.  Aside from Ms. Tollefson's

negligent misrepresentation claim, the court DISMISSES all remaining claims against

MH with prejudice.

## II.   BACKGROUND

This case involves Ms. Tollefson's default on her loan and MH's involvement in

subsequent foreclosure proceedings.  MH is a law firm that represented Defendant

Freedom Mortgage Corporation ("Freedom") during the foreclosure mediation

proceedings at issue in this motion.  The court reviews the relevant facts before laying out

the procedural background of this matter.

**A.    Factual Background**

In May 2015, Ms. Tollefson executed and delivered to American Financial

Networks, Inc. ("AFN") a promissory note in the amount of $297,924.00.  (*See* SAC

(Dkt. # 47) ¶ 35, Ex. D ("Loan Documents") at 2-3.)  At the same time, Ms. Tollefson

executed a deed of trust with Mortgage Electronic Registration System, Inc. ("MERS"),

as nominee for AFN, encumbering her home as security for the promissory note.  (*See id.*

at 4, 15.)  The King County Auditor recorded the deed of trust on June 11, 2015.  (*Id.*)

On July 9, 2015, an identical deed of trust was recorded in error and under a different

instrument number.  (SAC ¶ 40.)

*//*

---

[1] No party requests oral argument (*see* Mot. at 1; Resp. at 1), and the court does not consider oral argument to be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b).

1    Ms. Tollefson defaulted on her promissory note in August 2017.  (*Id.* ¶¶ 4, 41.)

2    On December 5, 2017, Defendant Aurora Financial Group, Inc. ("Aurora"), became the

3    holder of the promissory note and assignee of the deed of trust.  (*See id.* ¶ 41, Ex. C.)

4    Freedom obtained the servicing rights to the promissory note after Ms. Tollefson

5    defaulted and began seeking payment on the note.  (*Id.* ¶ 9.)

6    In early 2018, Ms. Tollefson and Freedom entered Washington's foreclosure

7    mediation program pursuant to the Foreclosure Fairness Act ("FFA").  (*Id.* ¶ 42.)  MH

8    represented Freedom during the foreclosure mediation process.  (*Id.*)  The FFA provides

9    a structure for mediation of mortgage defaults to enable the borrower to mitigate the

10   default and avoid foreclosure.  RCW 61.24.163.  The parties have a duty to mediate in

11   good faith.  RCW 61.24.163(7)(b)(iii); *see also* RCW 61.24.163(10).  The parties

12   convened three mediation sessions on May 2, 2018; July 9, 2018; and August 13, 2018.

13   (SAC ¶ 42.)

14   Ms. Tollefson alleges that in addition to Freedom, MH also attempted to collect

15   payment on her promissory note after she was in default.  (*See id.* ¶ 16.)  She further

16   alleges that MH was also referred to the foreclosure mediation program and assigned a

17   foreclosure mediator along with herself and Freedom.  (*See id.* ¶ 42.)  However, the

18   mediator generated a "Foreclosure Mediation Report/Certification" ("8/21/18 Mediation

19   Report") pursuant to the FAA which identifies Ms. Tollefson as the borrower, Freedom

20   as the beneficiary, and MH only as Freedom's attorney.  (*See id.*, Ex. E ("8/21/18

21   Mediation Rep.") at 1.)

22   *//*

ORDER - 3

1    Ms. Tollefson alleges that the foreclosure mediator certified that both Freedom

2    and MH were "lacking good faith in their foreclosure mediation participation." (SAC

3    ¶ 43.) However, the first Mediation Report finds only the "beneficiary," Freedom, to be

4    "not in good faith." (*See* 8/21/18 Mediation Rep. at 2 (capitalization omitted).)

5    Specifically, the mediator stated that Freedom did not complete the net present value

6    ("NPV") test or analysis and failed to adhere to agreements made in previous mediation

7    sessions. (*Id.*)

8    Three months after their initial foreclosure mediation, Freedom and MH served

9    Ms. Tollefson with a second notice of default signed November 5, 2018. (SAC ¶ 44.) In

10   early 2019, the parties once again entered foreclosure mediation under the FFA. (*Id.*)

11   This time, the parties convened two mediation sessions on February 28, 2019, and June

12   12, 2019. (*Id.*) Ms. Tollefson alleges that the foreclosure mediator again "certified that

13   Freedom and MH failed to meet their duty of good faith." (*Id.* ¶ 49.) However, the

14   Mediation Report for the second set of sessions again finds only the "beneficiary,"

15   Freedom, to be "not in good faith." (*See id.*, Ex. I ("6/28/19 Mediation Rep.") at 2.)

16   Specifically, the mediator stated that the "beneficiary failed to provide [a] timely [and]

17   complete set of documents." (*Id.*) Ms. Tollefson also alleges that Freedom and MH

18   requested additional documents from her throughout this second mediation process, but

19   nevertheless continued to deny modification of her mortgage based on supposedly

20   missing documents that Ms. Tollefson had already provided. (*Id.* ¶ 45.) Ms. Tollefson

21   further claims MH admitted to a delay in recognizing her initial document submissions,

22   and that Freedom and MH used this delay against her by claiming her submissions had

1    expired.  (*Id.* ¶ 48.)  Ms. Tollefson additionally alleges that in December 2018, MH sent

2    her a pay-off statement and reinstatement quote, both of which stated that MH may be

3    considered a debt collector.  (*Id.* ¶¶ 46-47.)

4    **B.    Procedural Background**

5          On January 31, 2020, Aurora filed suit in state court against Ms. Tollefson for

6    reformation of the deed of trust and judicial foreclosure.  (*See* Compl. (Dkt. # 1-10).)

7    The complaint alleged that MERS has an interest in Ms. Tollefson's property by way of a

8    "Junior Deed of Trust."  (*Id.* ¶ 23.)  Ms. Tollefson removed Aurora's complaint to this

9    court on February 24, 2020.  (*See* Not. of Removal (Dkt. # 1).)  The same day, Ms.

10   Tollefson also filed her original answer, counterclaims against Aurora, and third-party

11   claims against Freedom and MH.  (Ans. (Dkt. # 2)).  She filed an amended answer,

12   counterclaims, and third-party claims on March 31, 2020.  (Am. Ans. (Dkt. # 16).)  This

13   amended answer included claims against MH under the Washington Consumer Protection

14   Act ("CPA"), the Fair Debt Collection Practices Act ("FDCPA"), and for negligent

15   misrepresentation.  (*Id.*)

16         MH moved to dismiss Ms. Tollefson's third-party claims on April 14, 2020.

17   (MTD (Dkt. # 20).)  The court dismissed all of her claims against MH except for a

18   portion of her negligent misrepresentation claim.  (8/19/20 Order (Dkt. # 30).)  In

19   dismissing Ms. Tollefson's CPA claims against MH, the court pointed out that both

20   Mediation Reports only found bad faith on the part of Freedom.  (*Id.* at 12.)  The court

21   also dismissed Ms. Tollefson's FDCPA claim, finding her identification of MH as a debt

22   collector was conclusory and that MH could not be vicariously liable as Freedom's

1   attorney.  (*Id.* at 14-17.)  The court permitted portions of Ms. Tollefson's negligent

2   misrepresentation claim against MH to proceed and granted Ms. Tollefson leave to

3   amend.  (*Id.* at 19-20, 26.)

4          On October 8, 2020, the court dismissed Aurora's judicial foreclosure claim based

5   on the parties' stipulation, leaving only Ms. Tollefson's counterclaims and third-party

6   claims.  (10/8/20 Order (Dkt. # 39).)  On November 3, 2020, the court granted the

7   parties' stipulated motion to update the case caption, reflecting that only Ms. Tollefson's

8   claims against MH, Aurora, and Freedom (collectively "Defendants") remained.

9   (11/3/20 Order (Dkt. # 26).)

10         Ms. Tollefson filed her second amended complaint on November 4, 2020, and

11  renewed her claims under the CPA, the FDCPA, and for negligent misrepresentation

12  against MH.  (*See* SAC.)  MH moved to dismiss Ms. Tollefson's second amended

13  complaint on December 8, 2020.  (Mot.)  The court now considers MH's motion.

14                              **III.   ANALYSIS**

15         The court first outlines the applicable standard for Rule 12(b)(6) motions and the

16  materials it will consider before turning to the merits of MH's motion.

17  **A.      Rule 12(b)(6) Standard**

18         Under Federal Rule of Civil Procedure 12(b)(6), dismissal for failure to state a

19  claim is proper only if the pleadings fail to allege sufficient facts to establish a plausible

20  entitlement to relief.  *Bell Atl. v. Twombly*, 550 U.S. 544, 555-57 (2007).  "A claim has

21  facial plausibility when the plaintiff pleads factual content that allows the court to draw

22  the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*

1  *v. Iqbal*, 556 U.S. 662, 678 (2009).  When considering a motion to dismiss, the court

2  construes the complaint in the light most favorable to the nonmoving party.  *Livid*

3  *Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The

4  court must accept all well-pleaded facts as true and draw all reasonable inferences in

5  favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658,

6  661 (9th Cir. 1998).  Mere legal conclusions, however, "are not entitled to the assumption

7  of truth."  *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011) (quoting *Iqbal*,

8  556 U.S. at 679) (internal quotation marks and citations omitted).

9  **B.    Judicial Notice**

10          Before addressing the merits of MH's arguments, the court first determines what

11  materials may be considered.  Generally, a district court may not consider any material

12  beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss.  *Lee v. City of Los*

13  *Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  There are two exceptions.  First, a court may

14  consider material properly submitted as part of the complaint.  *Id.*  If not physically

15  attached to the complaint, the material must be of uncontested authenticity and

16  necessarily relied on by the complaint.  *Id.*  Second, the court may take judicial notice of

17  matters of public record pursuant to Federal Rule of Evidence 201.  *Khoja v. Orexigen*

18  *Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *see also* Fed. R. Evid. 201.

19  Accordingly, a court can take judicial notice of matters "not subject to reasonable

20  dispute," meaning those that are "generally known," or "can be accurately and readily

21  determined from sources whose accuracy cannot reasonably be questioned."  *Id.* (*quoting*

22  Fed. R. Evid. 201(b)) (internal quotation marks omitted).  Both parties request judicial

1   notice of various materials. (*See* Mot. at 3-5; Resp. at 4.) The court grants MH's request

2   and grants Ms. Tollefson's request in part.

3       MH requests that the court take judicial notice of the assessed tax value and

4   recorded sale price of the underlying property in this matter. (Mot. at 4.) MH provides

5   these values in the form of a web print out from the King County Department of

6   Assessments ("KCDA") website ("KCDA values"). (Lance Decl. (Dkt. # 49) ¶ 4, Ex. A

7   ("KCDA Values").) It is appropriate for courts to take judicial notice of information

8   made publicly available on government websites and the authenticity of which is not

9   disputed. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Ms.

10  Tollefson does not dispute the authenticity of the KCDA values (*see* Resp.), and they are

11  made publicly available by a government entity (*see* KCDA Values). Therefore, the

12  court takes judicial notice of the KCDA values.

13      As to Ms. Tollefson's requests, the court also takes judicial notice of the majority

14  of her documents but for different reasons. Ms. Tollefson requests that the court take

15  judicial notice of Aurora's state court complaint, her own second amended complaint,

16  and the exhibits attached to her complaint. (Resp. at 4.) The court takes judicial notice

17  of these documents as either part of the complaint or necessarily relied on by the

18  complaint and of undisputed authenticity. *See Lee*, 250 F.3d at 688. Ms. Tollefson also

19  requests that the court take judicial notice of MH's website. (Resp. at 4.) She does not,

20  however, mention or rely on MH's website at any point in her complaint or briefing.

21  Therefore, the court need not consider whether to take judicial notice of the website.

22  *//*

1    **C.     MH's Motion to Dismiss**

2          MH moves to dismiss Ms. Tollefson's CPA, FDCPA, and negligent

3    misrepresentation claims.  (*See generally* Mot.)  The court considers each in turn.

4          1.     CPA

5          To recover under the CPA, a plaintiff must prove an "(1) unfair or deceptive act or

6    practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to

7    plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge*

8    *Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).  MH

9    argues that Ms. Tollefson has failed to allege an unfair or deceptive act related to either

10   the 2018 or 2019 mediation.  (Mot. at 9, 12.)  The court agrees.[2]

11         Ms. Tollefson alleges that MH violated the CPA based on a supposed finding of

12   bad faith by the foreclosure mediator.  (SAC ¶¶ 75, 96; Resp. at 5.)  The court observed

13   that the mediator found only Freedom, and not MH, to be acting in bad faith.  (8/19/20

14   Order at 12.)  Further, the court found that MH could not be liable for the foreclosure

15   mediator's finding solely because MH was Freedom's attorney.  (*Id.* at 13.)  The court

16   accordingly dismissed the CPA claim in Ms. Tollefson's previous third-party complaint.

17   (*Id.*)  Ms. Tollefson's second amended complaint renews these allegations, and the court

18   again finds them insufficient.  (*See id.*; SAC ¶ 75.)

19   //

20   //

21   _____

22        [2] Because the court finds that Ms. Tollefson has not sufficiently alleged an unfair or
deceptive act, the court does not consider MH's arguments that Ms. Tollefson did not suffer
injury as a result of MH's conduct.  (*See* Mot. at 10-11, 13.)

1    In an attempt to cure the deficiencies the court identified in its prior order, Ms.

2 Tollefson now alleges additional facts against MH arising from the two mediation

3 sessions.  (*Id.* ¶¶ 74.1-76, 95.1-95.4.)  Specifically, she alleges that MH acted in bad faith

4 in the mediation by making unnecessary requests for additional documents (*id.*

5 ¶¶ 74.2-74.3, 95.4); erroneously claiming that it had not received documents from Ms.

6 Tollefson (*id.* ¶ 95.2); and referring to Freedom's obligation to transmit required

7 documents as a "courtesy" (*id.* ¶ 95.3).  MH contends that these additional allegations do

8 not constitute unfair or deceptive acts.  (Mot. at 9.)  In response, Ms. Tollefson states that

9 these acts are sufficiently unfair or deceptive under the circumstances to satisfy the first

10 CPA element.  (Resp. at 6.)

11    To allege an unfair or deceptive act, Ms. Tollefson must show either that MH

12 engaged in a per se unfair trade practice as defined by statute, or that MH's alleged

13 conduct was unfair or deceptive as defined by Washington law.  *See Hangman Ridge*,

14 105 P.2d at 535.  Ms. Tollefson makes neither showing.  As to a per se unfair trade

15 practice, under the FFA, "the parties have a duty to mediate in good faith."  RCW

16 61.24.163(7)(b)(iii); *see also* RCW 61.24.163(10) (enumerating violations of the duty to

17 mediate in good faith).  The Washington legislature has declared that it is a per se unfair

18 or deceptive act in trade or commerce for any person to violate the duty of good faith

19 during mediation.  RCW 61.24.135(2).  As the court previously held, Ms. Tollefson has

20 failed to show that MH engaged in a per se unfair trade practice by acting in bad faith

21 during the mediations because the Mediation Reports only find Freedom to have acted in

22 bad faith.  (*See* 8/19/20 Order; *see also* 9/8/20 Order (Dkt. # 34) (rejecting same

1   argument on motion for reconsideration).)  The court has also held that MH cannot be

2   held liable for the foreclosure mediator's finding of bad faith on the part of Freedom.

3   (8/19/20 Order at 13.)  Because Ms. Tollefson provides no additional evidence that the

4   mediator found MH to be acting in bad faith and does not argue that MH can be held

5   liable for Freedom's bad faith, the court again the court finds these allegations

6   insufficient to establish a per-se violation of the CPA.

7        Having not alleged a per se violation, the court also concludes that Ms. Tollefson

8   has failed to establish that MH's conduct was unfair or deceptive within the meaning of

9   the CPA.  Although Ms. Tollefson's complaint states only that MH's alleged breach of

10  the duty of good faith was an unfair or deceptive act (*see* SAC ¶ 97), she now argues that

11  other actions by MH are sufficiently unfair or deceptive under the circumstances to

12  sustain a CPA claim (Resp at 6).  The court disagrees.  An unfair or deceptive act is an

13  act or practice with the capacity to deceive substantial portions of the public.[3]  *Klem v.*

14  *Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013).  To allege a deceptive act, the

15  plaintiff need not show the act was intended to deceive, but only that it had the capacity

16  to deceive a substantial portion of the public.  *Hangman Ridge*, 105 P.2d at 535.

17       Ms. Tollefson alleges that MH was responsible for delaying the mediation and

18  default mitigation required of beneficiaries under the FFA.  (SAC ¶¶ 74, 95.)  As MH

19  points out, however, it is neither the beneficiary of the loan nor the party required to

20

21       [3] *Klem* additionally notes that unfair or deceptive conduct, "not regulated by statute, but in violation of public interest" violates the CPA.  295 P.3d at 787.  Because neither party argues that MH's conduct falls into this category, the court does not consider this aspect of *Klem* in ruling on this motion.  (*See* Mot.; Resp.)

22

1   timely review the documents and provide NPV inputs.  (Mot. at 10.)  As for MH's

2   admitted delay in recognizing Ms. Tollefson's submissions under the FFA and MH's

3   misstatement of Freedom's obligations as a "courtesy," these clerical errors are not unfair

4   or deceptive conduct with the capacity to deceive a substantial portion of the public.

5   *Panag v. Farmers Ins. Co.*, 204 P.3d 885, 896 (Wash. 2009); *see, e.g.*, *Fed. Trade*

6   *Comm'n v. Cyberspace.Com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006) (holding

7   solicitation masquerading as rebate check that was sent to large portions of public was

8   misleading); *Floersheim v. Fed. Trade Comm'n*, 411 F.2d 874, 876 (9th Cir. 1969)

9   (holding disclaimer did not cure deceptive impression that demand letter was issued by

10  government).  The allegations of administrative errors here pale in comparison to

11  practices that have been found deceptive or unfair under the CPA.  *See Panag*, 204 P.3d

12  at 896 (citing cases).  In contrast to the above examples, MH's acts as Freedom's

13  attorney, which Ms. Tollefson alleges delayed the mediation, impacted only the parties to

14  the mediation and not a larger portion of the public.  *See id.*  Because Ms. Tollefson has

15  not sufficiently alleged a per se violation of the CPA nor unfair or deceptive conduct, the

16  court dismisses her CPA claims against MH.

17        2.    FDCPA

18        Ms. Tollefson also alleges a claim against MH under the FDCPA.  (*See* SAC

19  ¶ 126); *see also* 15 U.S.C. § 1692, *et seq*.  The elements of an FDCPA claim are:  (1) the

20  plaintiff has been the object of collection activity arising from a consumer debt; (2) the

21  defendant collecting the "debt" is a "debt collector" as defined in the FDCPA; and (3) the

22  defendant has engaged in any act or omission in violation of the provisions of the

1    FDCPA.  *See Est. of Hoskins v. Wells Fargo Bank, N.A.*, No. C20-0075RSM, 2020 WL

2    3884517, at *8 (W.D. Wash. July 9, 2020).  MH argues that Ms. Tollefson's FDCPA

3    allegations are conclusory and fail to establish that it is a debt collector or that it violated

4    any FDCPA provisions.  (Mot. at 14.)  Because Ms. Tollefson has not plausibly alleged

5    that MH is a "debt collector" under the FDCPA, the court dismisses her FDCPA claim.[4]

6           MH argues that simply labeling it a debt collector is insufficient to survive a

7    motion to dismiss.  (*Id.*)  The court agrees.  Under the FDCPA, a debt collector is "any

8    person who uses any instrumentality of interstate commerce or the mails in any business

9    the principal purpose of which is the collection of any debts, or who regularly collects or

10   attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

11   another."  15 U.S.C. § 1692a(6).  The court previously held that repeatedly describing

12   MH as a debt collector in the complaint, without accompanying factual content,

13   constituted nothing more than a legal conclusion and failed to meet the *Iqbal/Twombly*

14   pleading standard.  (8/19/20 Order at 14.)  Nevertheless, Ms. Tollefson again repeatedly

15   describes MH as a "debt collector" or as "attempting to collect at debt," throughout her

16   second amended complaint.  (*See, e.g.*, SAC ¶¶ 15-19, 20, 22, 24-27, 127, 132.)  As the

17   court previously held, such allegations are conclusions of law.  (8/19/20 Order at 14.)

18   Therefore, the court again finds these statements insufficient.

19   //

20

21         [4] Because the court finds that Ms. Tollefson has not demonstrated that MH is a "debt
     collector" under the FDCPA, the court does not consider MH's argument that its alleged actions
22   under the FDCPA did not cause Ms. Tollefson harm or that her claims are barred by the statute
     of limitations.  (*See* Mot. at 16-17.)

ORDER - 13

1    Ms. Tollefson has, however, provided additional evidence in support of her

2    allegation that MH is a "debt collector" within the meaning of the FDCPA in the form of

3    letters she allegedly received from MH in December 2018.  (*Id.* ¶¶ 130-31, Exs. F-G.)

4    These letters request that Ms. Tollefson submit payment to MH for the outstanding

5    balance of her default and contain a disclaimer that MH "MAY BE CONSIDERED A

6    DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT."  (*Id.*)  These letters,

7    however, are not sufficient to meet the definition of debt collector under the FDCPA.  A

8    failure to allege facts tending to show the defendant collects debts regularly or as a

9    principal purpose of its business is proper ground for dismissal of an FDCPA claim.  *See*

10   *Schlegel v. Wells Fargo*, 720 F.3d 1204, 1209 (9th Cir. 2013); *Ines v. Countrywide Home*

11   *Loans, Inc.*, No. 08cv1267 WQH, 2009 WL 690108, at *4 (S.D. Cal. March 12, 2009).

12   In *Kalnoki v. First American LoanStar Trustee Services LLC*, the court found that a

13   disclaimer at the top of a collection letter stating that the sender "may be construed as a

14   debt collector attempting to collect the above referenced debt," was insufficient to

15   support the inference that the defendant was a debt collector.  No. 2:11-cv-02816-GEB-

16   DAD, 2014 WL 1757216, at *4 (E.D. Cal. Apr. 29, 2014).  The court reaches the same

17   conclusion here.  Ms. Tollefson does not allege any facts that show or tend to show that

18   MH's "principal purpose" as a business is the collection of debts or that MH collects

19   debts "regularly."  (*See generally* SAC); *see* 15 U.S.C. §1692a(6).  While the two letters

20   may show that MH was engaged in debt collection in this instance, they do not establish

21   regularity of debt collection, or that MH engages in debt collection as the principal

22   purpose of its business.

ORDER - 14

1    Ms. Tollefson seems to argue, however, that MH may be considered a debt

2  collector under a more limited definition.  (*See* Resp. at 8-9.)  This argument also fails.

3  As the court stated in its previous order, the Ninth Circuit has recognized that "some

4  security enforcers are debt collectors only for the limited purposes of [15 U.S.C.

5  § 1692f(6)]."  (08/19/20 Order at 14); *see also Vien-Phuong Thi Ho v. ReconTrust Co.*,

6  858 F.3d 568, 573 (9th Cir. 2017).  Under this narrower definition, a debt collector is one

7  who "uses any instrumentality of interstate commerce or the mails in any business the

8  principal purpose of which is the enforcement of security interests."  15 U.S.C.

9  § 1692a(6).  As explained above, Ms. Tollefson has not provided facts sufficient to create

10  the plausible inference that MH's principal business purpose is the enforcement of

11  security interests.  Therefore, the court finds that MH is not a debt collector for purposes

12  of § 1692f(6).

13    Even if MH could be considered an FDCPA debt collector under § 1692f(6), Ms.

14  Tollefson's claims would still fail because she has not alleged a violation of the FDCPA.

15  As MH rightly points out (*see* Mot. at 16), Ms. Tollefson does not allege a specific

16  violation of § 1692f(6) (*see generally* SAC), and Ninth Circuit jurisprudence does not

17  support the imposition of liability on an attorney for client conduct absent some evidence

18  that the attorney was exercising control over the client (*see* 8/19/20 Order at 15); *see also*

19  *Clark v. Cap. Credit & Collection Servs.*, 460 F.3d 1162, 1173 (9th Cir. 2006).  Because

20  Ms. Tollefson has neither alleged a specific violation of the FDCPA nor plausibly alleged

21  that MH exercised control over Freedom, her claim fails.

22  //

ORDER - 15

1      Ms. Tollefson has not plausibly alleged that MH meets the definition of a "debt

2   collector" under the FDCPA.  Therefore, the court dismisses Ms. Tollefson's FDCPA

3   claim against MH.

4          3.    Negligent Misrepresentation

5          To state a claim for negligent misrepresentation, Ms. Tollefson must allege the

6   following elements:  (1) the defendant supplied false information for the guidance of

7   others in their business transaction; (2) the defendant knew or should have known that the

8   information was supplied to guide the plaintiff in his or her business transaction; (3) the

9   defendant was negligent in obtaining or communicating the false information; (4) the

10  plaintiff relied on the false information supplied by the defendant; (5) the plaintiff's

11  reliance on the false information supplied by the defendant was justified (that is, the

12  reliance was reasonable under the surrounding circumstances); and (6) the false

13  information was the proximate cause of the plaintiff's damages.  *See ESCA Corp. v.*

14  *KMPG Peat Marwick*, 959 P.2d 651, 654 (Wash. 1988).

15         MH challenges various aspects of Ms. Tollefson's negligent misrepresentation

16  claim.  (*See generally* Mot.)  First, MH argues that it is not involved in review of loss

17  mitigation applications, providing NPV inputs, requesting documents, or rejecting

18  documents as Ms. Tollefson has alleged.  (*Id.* at 19.)  Second, MH argues that Ms.

19  Tollefson cannot validly claim reliance on its statements and even if Ms. Tollefson did

20  rely on them, they did not cause her any harm.  (*Id.* at 19-20).

21         The court finds that Ms. Tollefson has sufficiently stated her claim for negligent

22  misrepresentation.  Ms. Tollefson alleges specifically that MH misrepresented that

1    Freedom would review her case for loan default mitigation (SAC ¶ 45), misrepresented to

2    the foreclosure mediator that Ms. Tollefson's loan default mitigation applications were

3    missing documents (*id.* ¶ 74) and withheld that the purported "junior deed of trust" was

4    simply an erroneously recorded duplicate deed (*id.* ¶ 154.6).  These alleged

5    misrepresentations occurred during the foreclosure mediation sessions in which MH

6    represented Freedom.  (*Id.* ¶¶ 154.1-154.6.)  Ms. Tollefson alleges that these

7    misrepresentations harmed her because they rendered her unable to achieve an agreement

8    on mitigation, prevented her from forgoing deed-in-lieu relief based on her belief that

9    there was a valid junior deed of trust encumbering her property, and required her to pay

10   statutory mediation fees.  (*Id.* ¶¶ 154.6-155.)  Taking these factual allegations as true, Ms.

11   Tollefson has plausibly alleged that MH supplied false information and that she relied on

12   that information to her detriment.  MH's argument that it is factually incorrect to "impute

13   statements" to it (Mot. at 19) is not properly raised on a motion to dismiss.  *See Wyler*

14   *Summit P'ship*, 135 F.3d at 661.  Thus, the court rejects MH's arguments and denies its

15   motion to dismiss Ms. Tollefson's negligent misrepresentation claim.

16   **D.    Leave to Amend**

17         As a general rule, when a court grants a motion to dismiss, the court should

18   dismiss the complaint with leave to amend.  *See Eminence Cap., LLC v. Aspeon, Inc.*, 316

19   F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)).  "A district court,

20   however, does not abuse its discretion in denying leave to amend where amendment

21   would be futile."  *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002).

22   Leave to amend may be denied for "failure to cure deficiencies by previous amendment."

1   *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).  The court

2   previously dismissed Ms. Tollefson's CPA and FDCPA claims against MH for the same

3   reasons set forth above (*see* 08/19/20 Order), and Ms. Tollefson has failed to adequately

4   plead those claims in her second attempt.  *See Johnson v. JP Morgan Chase Bank N.A.*,

5   No. C14-5607RJB, 2014 WL 7156862, at *3 (W.D. Wash. Dec. 15, 2014) (denying leave

6   to amend a second time for factually deficient claims).  Ms. Tollefson continues to rely

7   on insufficient facts or legal conclusions in order to overcome the deficiencies in these

8   claims.  This case has been active for more than a year, and Ms. Tollefson's continued

9   failure to adequately state her claims against MH delays its resolution.  Accordingly, the

10  court dismisses Ms. Tollefson's CPA and FDCPA claims against MH with prejudice and

11  without leave to amend.

12                              **IV.  CONCLUSION**

13          For the reasons stated above, the court GRANTS in part and DENIES in part

14  MH's motion to dismiss (Dkt. # 48).  The court GRANTS MH's motion to dismiss Ms.

15  Tollefson's CPA and FDCPA claims and dismisses those claims with prejudice.  The

16  court DENIES MH's motion to dismiss Ms. Tollefson's negligent misrepresentation

17  claim.

18          Dated this 2nd day of March, 2021.

19

20

21                                              JAMES L. ROBART
                                                United States District Judge

22

ORDER - 18